In the Matter of SIMEON T. FLANAGAN, an Attorney, Respondent.

First Department, February 13, 1931.

*Einar Chrystie*, for the petitioner.

*Edward A. Maher, Jr.*, for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Supreme Court of the State of New York, Appellate Division, First Department, on November 6, 1916.

The petition charged respondent with professional misconduct. He appeared and answered. The matter was referred to one of the learned official referees, and later there was substituted another of the learned official referees, who has duly reported. The petitioner now moves for such action as the court may deem proper.

The petition recites that in June, 1928, respondent was retained by Richard H. Grady to collect his share of an award made in a condemnation proceeding instituted by the city of New York to obtain title to certain premises in Queens county, which award had been paid to one Sprague, a former owner of the property. The agreement was that respondent was to receive fifteen per cent of the amount collected if collection were made without bringing suit, and twenty-five per cent of the amount recovered, if it became necessary to bring suit. On October 4, 1928, respondent received from Sprague $1,005.58 in settlement of the Grady claim.

The misconduct charged is that respondent converted the money collected in behalf of Grady to his own use; that he concealed from his client the fact that it had been collected during the period from October 4, 1928, to February 5, 1929; that he did not pay his client any part thereof until after he had received notice that a complaint had been lodged against him with the petitioner, and that he then gave the client $754.11 instead of the sum of $854.66 to which the client was entitled according to the terms of his retainer, the charge being that no action had been commenced against Sprague at the time the money was paid respondent.

The record shows that in May, 1923, Robert H. Grady purchased from Emmet Sprague certain property at Rockaway Beach, New York. The deed transferring the fee to Grady recited that the

property was conveyed — " Together with any award for the opening and taking of Beach Channel Drive in front of the premises hereby conveyed and subject to any assessment for the taking and opening of said Beach Channel Drive, and subject to the payment of the proportionate share of legal fees in connection with condemnation proceedings affecting the above parcel not exceeding five per cent."

In June, 1926, Sprague collected from the city of New York the award made for property taken, amounting to $19,622, which covered the damage to the property acquired by Grady, as well as other property. After Grady learned that Sprague had collected this award, and for about a year before retaining respondent, he negotiated with Sprague endeavoring to get what was due him, Sprague the while maintaining that nothing was due to Grady. On or about June 5, 1928, Grady retained respondent under the following retainer agreement: " Whereas Robert H. Grady has a certain cause of action pertaining to an award in connection with condemnation proceedings in the opening of Beach Channel Drive, Rockaway, affecting certain land owned by him, the said Harry Grady hereby retained as his attorney Simeon T. Flanagan upon the following terms and conditions:

" 1. The said attorney is to receive as his fee 15% of any amount he may collect for Mr. Grady if he succeeds in collecting the said amount without the necessity of any court proceeding.

" 2. The said attorney shall receive as his fee 25% of any amount he may recover in the event that it becomes necessary for him to institute action in the court for the purpose of collecting the money in question.

" 3. In consideration of the premises the said attorney hereby agrees to pay the 5% to the attorneys who were retained pursuant to agreement by the former owners of the property in question."

Grady's testimony is that after signing this agreement he was at respondent's office once a week and sometimes twice, and, in addition, was calling him on the telephone; that respondent said he was going to try to collect the money and that if Mr. Sprague did not pay soon, he was going to sue him. (It appears that Grady had another matter in which respondent was rendering services for him at the same time.) Grady testified that at no time did respondent inform him he had collected any money from Sprague; that for about seven months he called at respondent's office quite often and kept inquiring about his case against Sprague, and feeling that he was getting nowhere he got in touch with Sprague himself, and Sprague told him that he had paid respondent about seven months previous thereto. Grady then complained to the

Bar Association on or about February 7, 1929, and about a week or two thereafter he received word from respondent to come to his office. Grady called on respondent and received from him $750, and at the same time respondent told Grady that a suit was pending against Sprague to collect some more money actually due on this case, and that he, respondent, had not received enough at the time.

Respondent testified that after negotiations and communications with Sprague, he prepared a summons with notice in the City Court, suing for the amount which had been calculated as due Grady, and delivered the summons to a process server on the 1st day of October, 1928. On October 4, 1928, Sprague and his son called on respondent. Respondent's version of what happened then and immediately thereafter is told in the following extract from his testimony: " He came in with his son and I told them about our claim, * * *. He said he wanted to straighten out the thing if he possibly could and not have to go to trial. I told him that my figures indicated there was a balance due Grady of some $1,259.35, approximately, and he disputed that, and said it was about $200 less, about a thousand. So we finally agreed that he was to pay that much on account, and then the balance of two hundred — about $253, which was in dispute, would be paid later provided an investigation which I was conducting in the Bureau of Street Openings indicated that this balance was due; and he said that would be satisfactory. I gave him a receipt for that money, which was a check * * *. They left the office. I called up Grady that same day and told him that they had paid a thousand dollars on account, and asked him to come in and see me the next day. He came in a couple of days after that, and I told him about this balance which was due, and he said he preferred to wait and get the whole amount, and he took a copy of all my figures, and said that in his opinion he ought to get much more. * * * Grady stated to me that he thought he ought to get much more than $1,200. Well, I said, I knew he couldn't get any more than the exact amount that was due, $1,200. So he said he preferred to let the money stay in my possession until the whole thing was straightened out, which I said would be probably any day we might be able to straighten it out." He testified to further investigation and letters sent by him to Sprague to which no reply was received. He testified that he told Grady he could have the money on account, but Grady said he would wait until the balance was collected from Sprague; and that upon receiving notification from the Bar Association of the complaint against him he telephoned Grady and asked him what he meant. Grady called on respondent

and after some discussion said he wanted eighty-five per cent of the amount collected. Respondent told him he was only entitled to seventy-five per cent, and gave him $754.11 in cash.

The summons with notice which respondent delivered to the process server on October 1, 1928, was served on Sprague on October 10, 1928. Judgment was entered against Sprague, under this service, and on default, in the sum of $253.86, the balance which respondent contends was due. This judgment was entered in April, 1929, some two months after Grady's complaint to the Bar Association and the receipt by Grady from respondent of the $750. Respondent testified that Grady instructed him to proceed to collect the rest of the money, but after judgment was entered he told him not to issue execution.

Sprague's son testified that the payment to respondent in October, 1928, was in full for the Grady claim. The receipt states that the payment was " for settlement of the claim of Robert Harry Grady."

It was shown that when respondent received the check for $1,005.48 from Sprague he deposited it in his bank account in the Century Bank. This deposit was made on October 6, 1928. At that time respondent's account was overdrawn. Following the deposit, respondent withdrew various small sums of money from time to time, until January 1, 1929, when the balance had been reduced to $8.27. This amount was subsequently withdrawn and on February 1, 1929, the account was overdrawn $30.73.

It was also shown that during this time there were judgments outstanding against respondent.

Respondent testified that during all this period he had sufficient cash on hand in his office to pay the amount due Grady; the cash representing fees he had received for services rendered in connection with some criminal cases.

Respondent claims, notwithstanding proof of service of the summons on Sprague, as of October 10, 1928, that at the time of the payment to him by Sprague of the $1,005.48, on October 4, 1928, Sprague had already been served. He suggests that the error in date was made by the process server in his affidavit. Part of the testimony of Sprague's son lends support to the claim that the summons had been served before the October fourth payment. The official referee, in his report, finds: " While the summons therein appears to be dated October 1st, 1928, the affidavit of service shows that it was not served until the 10th day of October, six days after the settlement with Sprague had been consummated. Therefore, no action was actually pending at the time of the payment by Sprague to the respondent, and the respondent was not warranted in retaining more than 15% pursuant to the contract of

retainer." In view of respondent's belief that the summons had been served before the payment, which belief would seem to have been supported by the attitude of the Spragues, we do not think he overreached himself in retaining twenty-five per cent of the amount collected. He is, of course, bound by the date set forth in the affidavit of service, on which he subsequently entered judgment, and we, therefore, concur in the conclusion reached by the official referee.

There remains the question of which version of the retention of the money is to be accepted. Grady's, that he had no knowledge of respondent's receipt thereof until Sprague told him of the payment; or respondent's, that Grady was immediately informed and preferred to wait until the entire amount was collected. The official referee has accepted Grady's version. There are some few features of the testimony which support respondent's version and make it appear plausible in part at least. The official referee, however, had the witnesses before him and could judge for himself which one was telling the truth. He has concluded that the charges have been fully proven. We accept his conclusion.

The report of the official referee is sustained and respondent is suspended from practice for the period of one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, FINCH, MCAVOY and SHERMAN, JJ., concur.

Respondent suspended for one year.